UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BARBARA BURGESON,

        Plaintiff,

v.                            Case No:   2:13-cv-459-FtM-29CM

CAROLYN W. COLVIN,
Commissioner of Social Security,

        Defendant.

_____

## REPORT AND RECOMMENDATION[1]

Plaintiff, Barbara Burgeson, is appealing the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for a period of disability and Disability Insurance Benefits ("DIB").   For the reasons set forth herein, the Court recommends that the Commissioner's decision be **AFFIRMED** pursuant to 42 U.S.C. § 405(g).

### I.    Issues on Appeal

There are two issues on appeal: (1) whether the Administrative Law Judge ("ALJ") erred in failing to find that Plaintiff's spinal disorder is a severe impairment, and (2) whether the ALJ properly considered the opinions of Plaintiff's treating psychologist, Stephen P. Schengber, Psy.D., and her treating family practitioner, Dr. Joseph Richichi.   Specifically, Plaintiff argues that the ALJ erroneously discredited

---

[1] Failure to file written objections to the proposed findings and recommendations contained in this report within **fourteen (14)** days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

objective evidence of Plaintiff's spinal condition when determining Plaintiff's severe impairments at step two and failed to assign great weight to the opinions of Dr. Schengber and Dr. Richichi regarding the severity of Plaintiff's mental health limitations when determining Plaintiff's residual functional capacity ("RFC").

## II.   Procedural History

On February 8, 2010, Plaintiff applied for disability and DIB, alleging that she had been disabled and incapable of working since September 12, 2008 due to depression, anxiety and post-traumatic stress disorder ("PTSD").   Tr. 12, 129-30, 159.   The Social Security Administration ("SSA") denied Plaintiff's claim initially on August 17, 2010 (Tr. 52-54) and upon reconsideration on December 17, 2010.   Tr. 61-62.   Challenging the decision, Plaintiff requested and received a video hearing before an ALJ, held on December 9, 2011.   Tr. 33-50.   A vocational expert ("VE") testified at the hearing.   Tr. 46-50.   Plaintiff appeared and testified at the hearing.   She was represented by an attorney.   Tr. 34-45.   On May 16, 2012, the ALJ issued a decision finding Plaintiff not disabled from September 12, 2008 through the date of the decision.   Tr. 12-25.   Following the ALJ's decision, Plaintiff filed a Request for Review by the Appeals Council, which was denied.   Tr. 1-6.   Accordingly, the ALJ's May 16, 2012 decision is the final decision of the Commissioner.

On June 17, 2013, Plaintiff timely filed her Complaint with this Court under 42 U.S.C. §§ 405(g), 1383(c)(3).   Doc. 1.   Plaintiff argues that the matter should be reversed and remanded to the Commissioner for payment of benefits because her spinal condition is a severe impairment and the records of her treating physician

regarding her mental health limitations were not afforded proper weight.   The parties have briefed the issues and the matter is ripe for review.

### III.    Summary of the ALJ's Decision

The ALJ first determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2013.   Tr. 14.   At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since September 12, 2008, the alleged onset date.   Tr. 14.   At step two, the ALJ determined that Plaintiff had the following severe impairments: affective disorder and anxiety disorder.   Tr. 14.   At step three, the ALJ concluded that Plaintiff "did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1."[2]   Tr. 16.   Specifically, the ALJ considered Plaintiff's allegations of depression, anxiety and PTSD and concluded that her conditions did not satisfy the severity requirements of Section 12.00C of the listings.   Tr. 15; 20 C.F.R. pt. 404, subpt. P, app. 1.

With respect to the Plaintiff's mental impairments, the ALJ found that they did not meet or medically equal the criteria for mental disorders listed in Section 12.00 of the listings of impairments.   Tr. 14-16.   20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00.   In doing so, the ALJ explicitly considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section

---

[2] Appendix 1 is the Listing of Impairments which "describes for each of the major body systems impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."   20 C.F.R. § 405.1525(a).

12.00C of the Listing of Impairments (20 C.F.R. pt. 404, subpt. P, app. 1).   Tr. 15-16. These four broad functional areas are known as the "paragraph B" criteria.

In the first functional area – activities of daily living – the ALJ found that Plaintiff has mild limitations.   Tr. 15.   In the second functional area – social functioning – the ALJ found that the Plaintiff has moderate limitations.   *Id.*   In the third functional area – concentration, persistence or pace – the ALJ found that the Plaintiff has moderate limitations.   *Id.*   In the fourth functional area – episodes of decompensation – the ALJ found that Plaintiff had experienced no episodes of decompensation which have been of extended duration, according to the medical evidence of record.   Tr. 16.   In this regard, the ALJ noted that Plaintiff was Baker Acted[3] in January 2009 for one night.   *Id.*   Her admission was prompted, however, by her inquiring whether she would receive benefits if she committed suicide.   *Id.* The attending physician found she was not suicidal.   *Id.*

Thus, the ALJ determined that, because Plaintiff's medically determinable mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation that have been of extended duration, the paragraph B criteria were not satisfied.   Tr. 16.   *See* 20 C.F.R. § 404.1520(c).   Finding that the paragraph B criteria were not met, the ALJ further

---

[3] The Florida Mental Health Act of 1971 is commonly known as the "Baker Act."   Fla. Stat. § 394.451 *et seq.*   The Baker Act allows the voluntary and involuntary institutionalization and examination of an individual suffering from a mental illness and is considered a harm to self, harm to others or self-neglectful.   *Id.* at §§ 394.4625-467.

stated that he considered whether the "paragraph C" criteria were satisfied, and found that the evidence failed to establish the presence of the criteria.[4]   *Id.*

The ALJ then determined that Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: Plaintiff is limited to work where interaction with others is superficial in nature and incidental to the work performed.   Tr. 16.   The ALJ did not believe that Plaintiff is functionally limited to the extent she alleged, finding her statements concerning the intensity, persistence and limiting effects of the symptoms not credible to the extent they were inconsistent with the RFC.   Tr. 17.   Specifically, the ALJ stated that the objective evidence fails to support Plaintiff's subjective complaints, and the record is clear that Plaintiff is seeking disability in order to provide a source of income rather than as a benefit for being disabled.[5]   Tr. 17.   With respect to Plaintiff's alleged chronic back pain, degenerative disc disease, lumbar radiculitis, sciatica, and right forearm neuropathy, the ALJ found that though objective imaging confirms some of her allegations, they do not appear to cause her more than a minimal limitation in functioning pursuant to a physical consultative exam performed by family practitioner Daniel J. Johnson, M.D., on December 3, 2010, which the ALJ gave

---

[4] The Commissioner will assess the paragraph C criteria only if the paragraph B criteria are not satisfied.   20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00.

[5] The ALJ noted that Plaintiff's attorney argued in a pre-hearing memo that Plaintiff is disabled due to impairments of depression, anxiety, PTSD, chronic back pain, degenerative disc disease, lumbar radiculitis, sciatica, right forearm neuropathy, sleep disturbance, metabolic syndrome and restless leg syndrome.   Tr. 17, 559.   In the same document, however, the attorney also stated that Plaintiff's primary impairments are psychological.   Tr. 17, 560.

significant weight.[6]   Tr. 20, 440-42.   Concerning her mental limitations, the ALJ noted that most of Plaintiff's problems were caused by her workplace, and once she left her job she reported doing much better.   Tr. 22.   Further, the ALJ noted that the findings in records of Plaintiff's treating psychologist, Dr. Schengber, with whom she had weekly sessions over the course of two years, conflicted with other evidence in the record and were inconsistent with Plaintiff's statements regarding her activities of daily living in her function report.   Tr. 22-23, 147-54, 203-10. Accordingly, the ALJ assigned Dr. Schengber's findings little weight.   Tr. 23.

At step four, the ALJ determined that Plaintiff was unable to return to her past relevant work as an environmental services manager.   Tr. 23.   Thus, at step five, the ALJ relied on the Medical-Vocational Rule 202.14.   Because Plaintiff had nonexertional limitations that could erode her ability to perform unskilled work, the ALJ called a VE to testify as to other work Plaintiff could perform given her age, education, prior work experience and RFC.   Tr. 23-24.   The VE testified that, given all of these factors, Plaintiff would be able to perform the requirements of representative occupations such as cleaner and small products assembler.   Tr. 24. The ALJ relied on the VE's testimony and concluded that Plaintiff was able to perform

---

[6] Dr. Johnson also diagnosed Plaintiff with PTSD with ongoing anxiety, depression and insomnia.   Tr. 442.   Because of this, he concluded that Plaintiff would be unable to function outside of the home at the present time, but from a physical standpoint she had no limitations.   Tr. 442.   The ALJ afforded Dr. Johnson's mental findings little weight, as his primary area of practice is not psychiatry or psychology and his findings did not correspond with those of Sharon Ames-Dennard, Ph.D., a non-examining, file reviewing psychologist, and David B Rawlings, Ph.D., an examining consultative psychologist.   Tr. 19, 372-89.

other work existing in significant numbers in the national economy and therefore was not disabled.   Tr. 24.

### IV.   Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.   42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).   The Commissioner has established a five-step sequential analysis for evaluating a claim of disability.   *See* 20 C.F.R. § 404.1520. The claimant bears the burden of persuasion through step four, and, at step five, the burden shifts to the Commissioner.   *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.   *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)).   The district court must consider the entire record, including new evidence submitted to the Appeals Council for the first time, in determining whether the Commissioner's final decision is supported by substantial evidence.   *Ingram v. Astrue*, 496 F.3d 1253, 1265 (11th Cir. 2007).   The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).   Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would

accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) ("Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'").

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## V.   Relevant Evidence

Because the issues Plaintiff raises in her appeal relate to her mental impairments, back condition and activities of daily living, the following is a summary of the relevant evidence in the record concerning these issues.

### 1.   *Plaintiff's testimony*

Plaintiff was 53-years old at the time of the hearing.   She testified that she is a college graduate.   Tr. 47.   She last worked in 2008[7] and testified she cannot work

---

[7] Plaintiff last worked as an environmental services manager for Collier County, Florida.   She began working for Collier County in 1989.   Tr. 802.

because she cannot think the way she used to.   She described that her "brain feels like it's sort of stuck at sixteen" years old.   Tr. 34-35.   Plaintiff testified that she had a nervous breakdown and at the time was seeing her psychiatrist on a weekly basis and her psychologists and primary care physicians monthly.   Tr. 36-37.   She stated she was unable to focus all day every day.   Tr. 38.   She cried throughout the hearing and testified that she cries any time someone asks her how she is doing.   *Id.* Besides depression, PTSD and anxiety, Plaintiff testified that she also has physical problems including shortness of breath and lower back and sciatic pain that radiates into her right leg.   Tr. 38.   She stated that she has difficulty sitting longer than 15 minutes but is not limited in her ability to stand, walk distances, lift or carry.   Tr. 39-40.   She has problems sleeping and is fatigued during the day.   Tr. 42.   She stated that she does not clean or do anything around the house.   *Id.*   She sometimes just puts on dirty clothes because the laundry has piled up, and she testified that she showers once a week or if she has to.   Tr. 42-43.   She grocery shops but she testified it takes her "forever."   Tr. 43.   Her mediations include Lexapro for depression, Lorazepam for anxiety, Norpex for sleeplessness and restless leg syndrome and Pepcid AC for acid reflux and severe heartburn.   Tr. 43-44.

   2.   *VE's testimony*

   Gary Mizelle, a VE, testified at the hearing.   Tr. 47-50.   The VE classified Plaintiff's past relevant work as an environmental services manager as skilled.   Tr. 48.   The ALJ then posed the following hypothetical:

   Assume a hypothetical claimant with a date of birth of September 15, 1958.   Assume that this person is a college graduate, has past relevant

work as an environmental services manager.   Assume that this person retains the mental residual functional capacity to perform simple unskilled light work, where interactions with others are superficial in nature and incidental to the work performed.

Tr. 48.   The VE testified that this individual could do the job of housekeeping cleaner and small products assembler, both unskilled jobs.   Tr. 48-49.   The VE testified that his testimony was consistent with the Dictionary of Occupational Titles.   Tr. 49.

   *3.   Treaters*

   a.   **Stephen P. Schengber, Psy.D.**

   Dr. Schengber, a licensed psychologist and clinical neuropsychologist, has treated Plaintiff nearly every week for 45-minute psychotherapy sessions since January 2008 through at least December 2011.   Tr. 576.   Dr. Schengber's treatment notes comprise over 300 pages of Plaintiff's record.   Tr. 576-889.   He also prepared a treatment summary when submitting the records, dated December 5, 2011.[8]   Tr. 576-77.   Plaintiff was referred to Dr. Schengber by her neurologist, Igor Levy-Reis, M.D.   Tr. 801.   In the initial neuropsychological consultation performed on January 23, 2008,[9] Dr. Schengber stated that Plaintiff was experiencing symptoms of depression and anxiety since 2007 that she attributed to work-related stress, namely sexual harassment and pay discrimination, which she felt created a hostile work environment.   *Id.*   In 2008, she initiated a lawsuit against her employer, Collier

---

   [8] The treatment summary states that Dr. Schengber was preparing the summary in lieu of submitting Plaintiff's copious medical records.   Tr. 576.   At the hearing, the ALJ requested that Plaintiff submit Dr. Schengber's treatment records, which she did, and the records, dated January 23, 2008 through December 14, 2011, are included in the administrative record.   Tr. 46-47, 800.

   [9] This is prior to the alleged onset date of September 12, 2008.

County, Florida, for sexual harassment.   At one of her early sessions with Dr. Schengber, Plaintiff stated that she was going to be depressed as long as she was in that work environment.   Tr. 805-17.   Dr. Schengber's report stated that Dr. Joseph Richichi had been treating Plaintiff with Lorazepam following her bout of Bell's palsy[10] as well as for a nervous breakdown at work in which she collapsed and was crying hysterically.   Tr. 801-02.

Plaintiff had worked for Collier County since 1989.   In the 2008 consultation, she told Dr. Schengber that up until five years prior she loved her job.   Tr. 802.   She stated that she has problems with attention, concentration, mental focus and short-term memory.   *Id.*   Dr. Schengber opined that she had significant symptoms of depression and anxiety, caused by work-related conflicts.   Tr. 803.   He diagnosed Plaintiff with depressive disorder, anxiety disorder and problems coping with work-related stress, and determined she had a Global Assessment of Functioning ("GAF") score of 60.[11]   Tr. 804.   Dr. Schengber proposed a treatment plan of supportive psychotherapy; cognitive behavioral techniques; relaxation training; psychoeducation regarding depression, anxiety and panic disorder and continuation of her medications.   *Id.*

Over the course of his treatment from 2008 to 2011, Dr. Schengber noted that Plaintiff appeared sad, depressed, sullen, spoke soft and halting, had slow mental

---

[10]  Bell's palsy, also known as facial palsy, causes sudden weakness in the facial muscles and the face to droop.   www.mayoclinic.org.

[11]  GAF score (60-51): Moderate symptoms or any moderate difficulty in social, occupational, or school functioning.

processing, had decreased attention and concentration and had difficulty coping.   Tr. 578-697.   Notably, in late 2008, Dr. Schengber described Plaintiff as incapacitated with personality decompensation and believed that she should not return to work. Tr. 849.   During that time, Plaintiff reported having another breakdown, crying hysterically and hyperventilating.   Tr. 854-55.   In early 2009, Plaintiff reported feeling child-like and having low confidence, wondering if she would ever be happy again.   Tr. 717, 888.   On June 17, 2009, Dr. Schengber opined that Plaintiff's emotional status was "declining."   Tr. 724.   On August 26, 2009, Dr. Schengber saw Plaintiff on an emergency basis.   Tr. 737.   She reported feeling like she was regressing, and that her husband had noticed her child-like behavior.   *Id.*   Dr. Schengber found that she had deteriorated cognitively.   Tr. 740.   In early 2010, Plaintiff related that she felt infantile, and was having an anniversary reaction to her previous Baker Act, but was displaying her baskets at craft shows and it felt good that people liked her work.   Tr. 767, 775, 779.   On March 15, 2010, Plaintiff returned to Dr. Schengber and advised him that she continued to get worse, anxious and distracted, and two months later she felt she had regressed.   Tr. 783, 795.   She also felt she was doing worse in October 2010.   Tr. 599, 601.

In early 2011, Plaintiff reported that her family said she had started stuttering and she felt she continued to regress.   Tr. 617.   Dr. Schengber assessed that Plaintiff's condition had deteriorated.   Tr. 626.   In October 2011, Plaintiff's psychiatrist began to wean her off all medications, but as a result she became severely depressed and emotional.   Tr. 685.   Dr. Schengber again assessed that Plaintiff's

mood and cognition had deteriorated.   Tr. 686.   On December 5, 2011, Dr. Schengber reported that Plaintiff's current diagnoses were major depressive disorder, single episode, severe, without psychotic features; anxiety disorder and panic disorder without agoraphobia, with a GAF score of 50.   Tr. 577.

Dr. Schengber's December 5, 2011 treatment summary states that in his initial psychological consultation with Plaintiff on January 23, 2008, he diagnosed her with depressive disorder, anxiety disorder and panic disorder due to work-related stress. Tr. 576.   He further stated that "despite ongoing weekly psychotherapy and psychopharmacological interventions through her psychiatrist, Mrs. Burgeson's mental status continued to deteriorate."   *Id.*   He noted that he had been providing weekly outpatient individual psychotherapy with Plaintiff since January 23, 2008; and, while there had been occasional intermittent improvements in her mental status, she remained with "debilitating psychiatric conditions."   *Id.*   Dr. Schengber opined that the psychotherapy and psychiatric treatment were preventing the necessity of an in-patient psychiatric hospitalization rather than restoring her to her previous level of functioning.   *Id.*   In his treatment summary, Dr. Schengber diagnosed Plaintiff with major depressive disorder, panic disorder, problems coping with mental illness and disability status and assessed a GAF score of 50.[12]   He concluded:

> It is my professional clinical opinion within a reasonable degree of psychological certainty, that Mrs. Burgeson is presently disabled from any type of occupational functioning.   I will continue to provide weekly

---

[12]   GAF score (50-41): Serious symptoms or any serious impairment in social, occupational, or school functioning.

outpatient individual psychotherapy in efforts to restore her to her previous high level of functioning, but my prognosis is guarded in this case. However, she was a high functioning college educated woman with an excellent work history, and she has expressed her long-term desire to return to the work force. She is probably not an individual who will be on Disability for the remainder of her adult life.

Tr. 577.

On December 5, 2011, Dr. Schengber completed a Questionnaire as to Mental Residual Functional Capacity ("MRFC Questionnaire"). Tr. 555-57. He opined that Plaintiff has social interaction limitations which included marked[13] impairment in her ability to accept instruction from or respond appropriately to criticism from supervisors. Tr. 555. He also opined that Plaintiff has moderate[14] impairment in her ability to work in coordination with or in proximity to others without distracting them or exhibiting behavioral extremes and in her ability to respond appropriately to co-workers or peers and marked impairment in her ability to relate to the general public and maintain socially appropriate behavior. Tr. 555-56. Even if Plaintiff has minimal contact or interaction with others, Dr. Schengber believed that she would have problems completing her job duties. Tr. 556. With respect to sustained concentration and persistence, he opined that Plaintiff has marked impairment in her ability to maintain attention and concentration for more than brief periods of time and in her ability to perform at production levels expected by most employers. Tr. 556. Dr. Schengber further concluded that Plaintiff's condition was likely to

_____

[13] The form defines "marked" as unable to function in this area from 26% to 50% of the work day or work week. Tr. 555.

[14] The form defines "moderate" as unable to function in this area from 11% to 25% of the work day or work week. Tr. 555.

deteriorate if she was placed under stress particularly that of a job – this assessment being based on Plaintiff having deteriorated in the past when she attempted to work under stress.   He further opined that Plaintiff was incapable of managing her own funds and that her impairments had lasted or were expected to last 12 months or more.   Tr. 557.

        **b.**    **Joseph Richichi, M.D.**

Also at issue in this appeal is Plaintiff's treatment from family practitioner Joseph Richichi, M.D., from 2008 through 2011.   Tr. 307-50, 450-500, 518-41.   In 2008 she complained of depression and reported having a nervous breakdown at work.   Tr. 335.   She was diagnosed with anxiety and depression.   Tr. 335.   She complained of increased depression and anxiety in December 2008 and reported that she had not been bathing or brushing her teeth.   Tr. 334.   Dr. Richichi diagnosed Plaintiff with psychologically dependent thinking, all-consuming to a point of self-destruction (not suicidal); emotional stress secondary to previous employment; negative behavior; low self-esteem and anxiety/depressive disorder secondary to previous employment.   Tr. 334.   One month later, on January 22, 2009, Dr. Richichi diagnosed Plaintiff with PTSD, anxiety/depression and restless leg syndrome.   Tr. 332.

On May 5, 2010, Dr. Richichi diagnosed Plaintiff with neuropathy in her arm, attributing it to her history of "computer work," but she reported to Dr. Richichi that she was walking, gardening and doing yard work.   Tr. 318.   Later that year, Plaintiff reported that she was developing paranoid feelings and had difficulties

controlling her emotions.   Tr. 466.   In June 2011, Plaintiff was complaining of headaches and lower back pain that radiated down to the back of her right leg.   Dr. Richichi diagnosed Plaintiff with right sciatic pain, right leg pain and L5 radiculopathy.   Tr. 538, 540.   He also diagnosed her with memory loss, anxiety, depression and insomnia.   Tr. 528.

On November 29, 2011, Dr. Richichi completed an MRFC Questionnaire.   Tr. 550-52.   Similar to Dr. Schengber, he opined that Plaintiff has social interaction limitations that include moderate impairment in her ability to accept instruction from or respond appropriately to criticism from supervisors and to work in coordination with or in proximity to others without distracting them or exhibiting behavioral extremes.   Tr. 550.   With respect to sustained concentration and persistence, he opined that Plaintiff has a marked impairment in her ability to maintain attention and concentration for more than brief periods of time and an extreme[15] impairment in her ability to perform at production levels expected by most employers.   Tr. 551.   With respect to her adaptation, he opined that Plaintiff has moderate impairment in her ability to respond appropriately to changes in a work setting and in her ability to maintain personal appearance and hygiene.   *Id.*   He further opined that she has marked impairment in her ability to remember locations and workday procedures and instructions and to behave predictably, reliably and in an emotionally stable manner.   *Id.*   He opined that she has extreme impairment in

---

[15] The form defines "extreme" as unable to function in this area over 50% of the work day or work week.   Tr. 550.

her ability to tolerate customary work pressures.   *Id.*   Based on Plaintiff's having exhibited similar problems in the past, Dr. Richichi concluded that her condition was likely to deteriorate if she was placed under stress of a job.   He further opined that Plaintiff was incapable of managing her own funds and that her impairments had lasted or were expected to last 12 months or more.   Tr. 552.

### c.    Ronny R. Valenzuela, M.D.

Plaintiff also received mental health treatment from psychiatrist Ronny Valenzuela, M.D., from 2008 through 2011.[16]   On October 27, 2008, Dr. Valenzuela completed an initial psychiatric evaluation.   Tr. 413.   Plaintiff reported feeling depressed over the previous few months with a combination of depression and anxiety.   Tr. 413.   Dr. Valenzuela assessed she suffered from anhedonia, difficulty concentrating/thinking, excessive crying, isolation, feelings of guilt, poor motivation and no interest in sex and diagnosed her with major depression and anxiety disorder. Tr. 415-17.   During an office visit to Dr. Valenzuela on October 6, 2010, Plaintiff reported that a few days prior her anxiety level was out of control.   Tr. 407.   On October 19, 2010, Plaintiff returned to Dr. Valenzuela and reported experiencing severe stress over the previous two weeks and that her anxiety and depression had returned.   Tr. 402.   Plaintiff stated that she was crying often, worrying and had panic attack-like symptoms.   Tr. 402.   Although Dr. Valenzuela noted that she had a sad and depressed mood, her insight was often good and her concentration and

---

[16] Plaintiff reported seeking Dr. Valenzuela every 6-8 weeks for medication management.   Tr. 372.

abstraction were intact. *Id.* Dr. Valenzuela opined that she was organized and goal-directed. *Id.* He also noted that she had poor compliance with her medication. *Id.*

4. *Consultative examinations*

a. **David B. Rawlings, Ph.D.**

At the request of the Disability Determination Services, Plaintiff was referred to psychologist Dr. David B. Rawlings, Ph.D., for a consultative examination on July 20, 2010. Tr. 372. Most of Dr. Rawlings' evaluation recounts what Plaintiff reported to him during the exam. In sum, Plaintiff stated that she was in relatively good health until a "nervous breakdown" in 2008, after which she began to suffer from depression, anxiety and personality changes. Tr. 372-74. She reported helplessness, not feeling as smart or as strong as she used to, feeling less confident, being unable to do anything without asking her husband or son for help, feeling child-like, no longer going out to lunch with friends or colleagues, no longer volunteering, traveling or doing public speaking and being 50% less sexually active than she was 1-2 years prior. Tr. 374. She stated she spends most of her time weaving baskets and doing other arts and crafts. *Id.*

Dr. Rawlings described Plaintiff's mood and affect as depressed, sullen and flat. Tr. 375. He observed that she was depressed and had mood swings throughout the interview and that she was particularly tearful when talking about her employment situation and the events that led up to her claimed "breakdown." *Id.* Dr. Rawlings administered the Folstein mini-mental state examination in which

Plaintiff scored 30 out of 30 correct with a 3 out of 3 words recalled at 5 minutes.   *Id.*
Using the Beck Depression Inventory-II, Dr. Rawlings assessed that Plaintiff was
severely depressed.   *Id.*   He also administered the Beck Anxiety Inventory, in which
Plaintiff obtained a score of 27, indicating severe anxiety.   *Id.*   Dr. Rawlings
diagnosed Plaintiff with major depressive disorder, hypoactive sexual desire disorder
and probable sleep disturbance, with a GAF score of 52.   *Id.*   He opined that
Plaintiff could manage her finances.   Tr. 376.

> **b.**   **Daniel J. Johnson, M.D.**

On December 3, 2010, Dr. Daniel J. Johnson, a family practitioner, performed
a second consultative examination at the request of the Disability Determination
Services.   Tr. 440-42.   As with Dr. Rawlings' report, most of Dr. Johnson's
evaluation recounts what Plaintiff reported to him during the exam.   In sum,
Plaintiff's chief complaints were depression, anxiety and PTSD.   Tr. 440.   Dr.
Johnson reported that Plaintiff cried throughout and was overwhelmed talking about
her issues.   *Id.*   He diagnosed Plaintiff with severe PTSD with ongoing anxiety,
depression and insomnia.   *Id.*   Dr. Johnson noted though that from a physical
standpoint, she did not have any restrictions as far as sitting, standing and walking
and she has full use of her hands.   *Id.*   He assessed that based on his evaluation of
her mental impairments, Plaintiff was unable to function outside of her home at all
and that she was barely functional in her own home.   *Id.*   He opined that while
Plaintiff did not have significant restrictions regarding her ability to sit, stand and

walk, that she would not have the focus or ability to function in a work setting for the time being.   *Id.*

###### 5.      *Non-examining, file-reviewing consultants*

###### a.      Dana Dennard, Ph.D.

On August 17, 2010, Dana Dennard, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique ("PRT") at the request of the Disability Determination Services.   Tr. 377-90.   Dr. Dennard opined that Plaintiff had no restrictions in activities of daily living, no difficulties in maintaining social functioning and mild difficulties in maintaining concentration, persistence or pace. Tr. 387.   Dr. Dennard also stated that Plaintiff had no episodes of decompensation of extended duration.   Tr. 387.

###### b.      Sharon Ames-Dennard, Ph.D.

On October 27, 2010, Sharon Ames-Dennard, Ph.D., a state agency psychologist, completed a PRT at the request of the Disability Determination Services.   Tr. 421-33.   Dr. Ames-Dennard opined that Plaintiff has mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace.   Tr. 431. Dr. Ames-Dennard opined that Plaintiff has had no episodes of decompensation of extended duration.   Tr. 387.

That same day, Dr. Ames-Dennard completed a Mental Residual Functional Capacity Assessment.   Tr. 435-37.   Dr. Ames-Dennard opined that Plaintiff was not significantly limited in her ability to remember locations and work-like procedures

and not significantly limited in her ability to remember very short and simple instructions.   Tr. 435.   With respect to sustaining concentration and persistence, she opined that Plaintiff was not significantly limited in her ability to carry out very short and simple instructions or in her ability to make simple work-related decisions, but was moderately limited in her ability to carry out detailed instructions, to maintain attention and concentration for extended periods, to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.   Tr. 435-36.   With respect to social interaction, she opined that Plaintiff was not significantly limited in her ability to interact appropriately with the general public, to ask simple questions or request assistance, or to accept instructions and respond appropriately to criticism from supervisors.   Tr. 436.   Regarding adaptation, she opined that Plaintiff was not significantly limited in her ability to travel in unfamiliar places or use public transportation, or to set realistic goals or make plans independently of others.   Tr. 436.   Dr. Ames-Dennard opined that in light of Plaintiff's social skill deficits, she would probably function best in a work setting requiring limited social engagement.   Tr. 437.

### c.   Jean R. Ganthier

On August 17, 2010, Jean R. Ganthier, a non-examining, file-reviewing single decisionmaker, completed a Physical Residual Functional Capacity assessment at the request of the Disability Determination Services.   Tr. 391-98.   Mr. Ganthier listed Plaintiff's diagnoses as history of back disorder and right forearm neuropathy.   Tr.

392.  Mr. Ganthier opined that Plaintiff could lift and/or carry (including upward pulling) 20 pounds occasionally, 10 pounds frequently; stand and/or walk (with normal breaks) about 6 hours in an 8-hour workday; sit (with normal breaks) for about 6 hours in an 8-hour workday; and push and/or pull (including operation of hand and/or foot controls) unlimited, other than as shown for lift and/or carry.   *Id.*

## VI.   Analysis

On appeal, Plaintiff first argues that the ALJ erroneously discredited the objective evidence of Plaintiff's spinal condition.   Specifically, Plaintiff claims that the ALJ's RFC finding is not supported by substantial evidence because she has severe physical impairments that limit her RFC, which were not properly considered by the ALJ.   Second, Plaintiff asserts that the ALJ failed to assign the proper weight to the opinions of Dr. Richichi and Dr. Schengber regarding the severity of Plaintiff's mental health limitations.   The Court finds that the decision of the Commissioner should be affirmed as to both issues.

### 1.   *Whether Plaintiff's spinal disorder is a severe impairment*

Plaintiff states that the ALJ improperly omitted her spinal disorder[17] as a severe impairment, asserting substantial evidence supports otherwise.   Defendant responds that the argument lacks merit because Plaintiff never alleged she suffered from a spinal disorder that affected her ability to work nor that she had a severe impairment due to her spinal disorder that affected her ability to work beyond the

---

[17] Plaintiff states that she has a "spinal disorder" but does not specifically identify the condition.

limitations found by the ALJ.   The Government further points out that the ALJ did discuss the medical evidence of Plaintiff's physical condition, including her alleged chronic back pain, degenerative disc disease, lumbar radiculitis sciatica and right forearm neuropathy.   Tr. 17, 20.   The Court agrees with the Commissioner.

At the second step in the sequential evaluation process, the ALJ determines whether the claimant has a severe impairment.   20 C.F.R. § 404.1520(a)(4)(ii).   A severe impairment is an impairment or combination of impairments that significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c).   "A non-severe impairment is a slight abnormality which has such a minimal effect on the individual that it could not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."   *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984).   Here, the ALJ determined that the only severe impairments Plaintiff suffered from were affective disorder and anxiety disorder.   Tr. 14.

When a plaintiff fails to allege disability due to a specific condition on their application or at hearing, the ALJ has no duty to consider and make findings regarding that condition.   *Street v. Barnhart*, 133 F. App'x 621 627 (11th Cir. 2005) (ALJ did not err in failing to consider claimant's mental impairment and intellectual functioning because they were not listed on his application and the condition was not testified to at the hearing even though plaintiff was represented by an attorney).

In this case, Plaintiff alleged in her disability application the inability to work due to depression, anxiety and PTSD.   Tr. 12, 129-30, 159.   She also completed a

function report in which she reported that she had no physical limitations.   Tr. 152.
For the first time at the hearing, Plaintiff testified she had lower back pain and sciatic
pain radiating into her left leg.   Tr. 38-39.   She also testified that if she drove or sat
for more than 15-20 minutes she would experience pain but that she had no
limitations standing, walking or carrying heavy objects.   Tr. 39-41.   Further, and as
noted by the ALJ, Plaintiff's attorney argued in a pre-hearing memo that she is
disabled due to impairments of depression, anxiety, PTSD, chronic back pain,
degenerative disc disease, lumbar radiculitis, sciatica, right forearm neuropathy,
sleep disturbance, metabolic syndrome and restless leg syndrome.   Tr. 17, 559.   Yet
in the same document the attorney stated that Plaintiff's primary impairments are
psychological.   Tr. 17, 560.

Contrary to Plaintiff's assertion, the ALJ properly considered the medical
evidence of Plaintiff's allegations of chronic back pain, degenerative disc disease,
lumbar radiculitis, sciatica and right forearm neuropathy.   While he noted that the
objective medical evidence confirmed some of her allegations, he concluded that her
back did not appear to cause her more than a minimal limitation in functioning.   Tr.
20.   For example, the ALJ discussed an August 2008 MRI that showed Schmorl's
nodes at T11 through L-3, degenerative disc disease and mild bulging discs at L4-5
with a small annular tear but there was no significant spinal stenosis or protrusion.
Tr. 20, 302.   The ALJ further discussed the December 2010 physical consultative
examination performed by Dr. Johnson.   Tr. 19-20, 440-43.   Dr. Johnson opined that
Plaintiff does not have significant restrictions in sitting, standing or walking, and she

has full use of her hands.   Tr. 19, 440-43.   Dr. Johnson further reported that Plaintiff can perform fine motor skills, such as zipping, buttoning, opening doors and jars, and could pick up a coin off the counter without difficulty.   Tr. 440.   She had full range of motion and full strength in all extremities and grip strength.   Tr. 441. Plaintiff also had stated in her function report that she drives, prepares meals for her family, does laundry and goes shopping.   Tr. 20, 148, 206.   Consequently, the ALJ concluded that Plaintiff's physical limitations were not severe.   Tr. 20.

The ALJ's decision is supported by the record.   Plaintiff has submitted no evidence of severe physical limitations because of her back.    In fact, Plaintiff testified that she has no limitations standing, walking or carrying heavy objects.   Tr. 40-41. *See* 20 C.F.R. § 404.1521(a) (an impairment not severe if it does not significantly limit your physical or mental ability to do basic work activities).   Furthermore, no doctor has opined that Plaintiff's back condition is so debilitating as to preclude Plaintiff from working.   Rather, the record shows the opposite.

The majority of Plaintiff's medical visits were for treatment related to her mental impairments.   Plaintiff's records rarely mention back problems or that she had any limitations in her ability to function due to her back nor was it a condition she sought treatment for.   In fact, Mr. Ganthier, a non-examining, file-reviewing single decisionmaker, completed a Physical Residual Functional Capacity opining that Plaintiff could lift and/or carry (including upward pulling) 20 pounds occasionally, 10 pounds frequently; stand and/or walk (with normal breaks) about 6 hours in an 8-hour workday; sit (with normal breaks) for about 6 hours in an 8-hour

workday; and push and/or pull (including operation of hand and/or foot controls) unlimited, other than as shown for lift and/or carry.   Tr. 392.

Additionally, the ALJ found in Plaintiff's favor at step two of the sequential evaluation process by finding that she had severe impairments.   Tr. 14.   The ALJ then proceeded with the other steps of the sequential evaluation process and found Plaintiff could perform the range of work at all exertional levels with certain nonexertional limitations.   Tr. 16.   As the Eleventh Circuit has stated, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe."   *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010).   Thus, the ALJ's findings were not in error.

### 2.      Whether the ALJ properly followed the treating physician rule

On appeal, Plaintiff argues that the ALJ failed to properly follow the treating physician rule when he considered the opinions of her treating psychologist, Dr. Schengber, and treating family practitioner, Dr. Richichi.   Plaintiff asserts that substantial evidence supports a finding of disabled due to Plaintiff's mental health impairments, as evidenced by their treatment records.   These doctors completed MRFC Questionnaires in November and December 2011, indicating by checkmarks on the forms that Plaintiff had some marked and/or extreme limitations in social interaction, adaptation and sustained concentration and persistence.   Tr. 550-52, 555-57.[18]

---

[18] The parties acknowledge that the MRFC Questionnaires completed by Dr. Schengber and Dr. Richichi are both missing a page.   Defendant states in its memorandum that he confirmed that the agency is not in possession of the missing pages and they were not

When an impairment does not meet or equal a listed impairment at step 3, the ALJ will proceed to step 4 to assess and make a finding regarding the claimant's RFC based upon all the relevant medical and other evidence in the record.   20 C.F.R. § 404.1520(e).   In this case, the ALJ found Plaintiff "did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1."   Tr. 26.   Therefore, the ALJ proceeded to assess and make a finding regarding the claimant's RFC.   The RFC is the most that a claimant can do despite his limitations.   *See* 20 C.F.R. § 404.1545(a).   The ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, medical signs and laboratory findings, the effects of treatment, daily activities, lay evidence and medical source statements.   *Id.*   At the hearing level, the ALJ has the responsibility of assessing a claimant's RFC.   *See* 20 C.F.R. § 404.1546(c).   The determination of RFC is within the authority of the ALJ; and the claimant's age, education, and work experience is considered in determining the claimant's RFC and whether he can return to his past relevant work.   *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)).   The RFC assessment is based upon all the relevant evidence of a claimant's remaining ability to do work despite his

---

before the ALJ.   Doc. 17 at 8 n.2.   Although Plaintiff was granted leave to supplement the record with the missing pages (Docs. 15, 16), Plaintiff did not submit the missing pages to the Court and does not raise the absence of these pages as error, either before the Commissioner or on appeal.

impairments.   *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004); *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)).

The ALJ is required to review all of the medical findings and other evidence that supports a medical source's statement that a claimant is disabled.   Moreover, opinions on some issues, such as the claimant's RFC and whether the claimant is disabled or unable to work, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; *i.e.*, that would direct the determination or decision of disability."   20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-5p.   Thus, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.   20 C.F.R. § 404.1527(d)(1).   The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's RFC (20 C.F.R. §§ 404.1545, 404.1546) or the application of vocational factors, because that ultimate determination is the province of the Commissioner.   20 C.F.R. § 404.1527(e).

Here, the ALJ properly analyzed Plaintiff's mental abilities according to the special psychiatric review technique outlined in 20 C.F.R. § 404.1520a.   The ALJ determined Plaintiff had mild limitation in activities of daily living, based in part on her ability to manage her hygiene when motivated, to drive, shop and count change. Tr. 15, 147-54.   The ALJ determined Plaintiff had moderate limitation in social functioning, as she was currently involved in a lawsuit against her supervisor at work

and attributed her breakdown to her work environment.   Tr. 15, 376, 440.   The ALJ

noted Plaintiff sought psychiatric treatment 10 years prior to the work incident and

started outpatient counseling in November 2007, due to feelings of anxiety.   Tr. 15,

389.   Based on the opinion of Dr. Ames-Dennard,[19] a state agency consultant, the

ALJ determined Plaintiff was not significantly limited in the ability to interact

appropriately with the general public.   Tr. 15, 435-37.   In the third functional area,

the ALJ determined she had moderate limitation in concentration, persistence or

pace, based on Dr. Ames-Dennard's opinion.   Tr. 15-16, 431.   In the area of

decompensation, the ALJ found she had no episodes of extended duration.   Tr. 16.

The ALJ then determined Plaintiff was limited to work where interaction with

others was superficial in nature and incidental to the work performed.   Tr. 16.   In

doing so, the ALJ considered and assigned little weight to the opinions of Dr. Richichi

and Dr. Schengber.   Generally, when determining a plaintiff's RFC "[a]n ALJ must

give a treating physician's opinion substantial weight, unless good cause is shown."

*Castle v. Colvin*, —— F. App'x ——, 2014 WL 595284 (11th Cir. Feb. 18, 2014) (citing

*Phillips*, 357 F.3d at 1240); 20 C.F.R. § 404.1527(c)(2); *Lewis*, 125 F.3d at 1440; *Sabo

v. Comm'r of Soc. Sec.*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996).   "Good cause exists

when the '(1) treating physician's opinion was not bolstered by the evidence; (2)

---

[19] Although the ALJ discussed the findings of "Dr. Dennard" throughout his opinion, the Court notes that the ALJ is, in most instances, referring to the findings of Dr. Ames-Dennard.   This is evidenced by the fact that when the ALJ discusses "Dr. Dennard" he cites to Exhibit 11F, which is the Mental Residual Functional Capacity Assessment completed by Dr. Ames-Dennard.   Tr. 435-37.   Thus, the Court assumes that when the ALJ states that he afforded significant weight to the opinions of "Dr. Dennard" (Tr. 23), he actually afforded significant weight to Dr. Ames-Dennard.

evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting *Phillips*, 357 F.3d at 1240). Under the regulations, the ALJ must weigh any medical opinion based on the treating relationship with the claimant, the length of the treatment relationship, the evidence the medical source presents to support his opinion, how consistent the opinion is with the record as a whole, the specialty of the medical source and other factors. *See* 20 C.F.R. § 404.1527(c), (c)(2)(i)-(ii), (c)(3)-(6); *Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements); *Lewis*, 125 F.3d at 1440. Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987); *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); Social Security Ruling ("SSR") 96-2p.

In this case, the Court finds that the ALJ properly considered Dr. Richichi's[20] findings in the MRFC Questionnaire and assigned them little weight[21] because the physician cited to no objective evidence in support of his findings.   Moreover, the ALJ found they were inconsistent with the findings of treating psychiatrist Dr. Valenzuela, examining psychological consultant Dr. Rawlings and state agency consultant Dr. Ames-Dennard.   Tr. 19.   The ALJ supported his decision and showed good cause for assigning little weight to Dr. Richichi's MRFC Questionnaire in compliance with the applicable rules and regulations by citing to specific evidence in the record demonstrating that Dr. Richichi's opinions were inconsistent with the record as a whole.

Specifically, Dr. Richichi's records showed Plaintiff alleged a nervous breakdown at a September 11, 2008 visit, however, the ALJ noted that Dr. Richichi prepared an excuse slip from work allowing her to return on October 13, 2008, indicating that her nervous breakdown was not as severe as she alleged.   Tr. 21, 336, 487.   In contrast, Plaintiff reported feeling better or good to Dr. Richichi in October

---

[20] There is a mistake in the record in this regard.   The ALJ thought that Dr. Richichi's MRFC Questionnaire was actually completed by a "Dr. Richardson."   *Id.*   The mistake stems from Plaintiff attorney's cover letter to the ALJ, wherein he stated that the MRFC was completed by "Joseph Richardson, M.D.," when in fact it was completed by Dr. Richichi.   Tr. 549.   Although one of the bases for assigning little weight to Dr. Richichi's MRFC Questionnaire was that Dr. Richichi cited no objective evidence in support of his findings, this error does not affect the Court's analysis because the ALJ reviewed Dr. Richichi's treatment notes and gave them significant weight, finding that his notes supported his conclusion as to Plaintiff's lack of disability.   Tr. 18-19, 23.   The ALJ would not, therefore, find those same treatment notes to provide support to Dr. Richichi's MRFC opinions of marked or extreme limitations.   Plaintiff does not raise the error in the briefing.

[21] Plaintiff states in her memorandum that the ALJ "rejected" the opinions of Drs. Richichi and Dr. Schengber; however, the ALJ assigned little weight to both Dr. Richichi's MRFC Questionnaire and Dr. Schengber's MRFC Questionnaire and his treatment notes.

2009, June 2010 and December 2010.   Tr. 21, 476, 463, 469.   In February 2010 she reported feeling "okay" and that she was exercising daily and was keeping busy.   Tr. 21, 320.   The ALJ further pointed out that some of Plaintiff's visits to Dr. Richichi consisted of monthly follow-ups, which included treatment for conditions unrelated to her disability claim.   Tr. 21.   Plaintiff admitted she was not taking her medication as prescribed.[22]   Tr. 21, 537.

The ALJ further discounted Dr. Richichi's MRFC opinions of marked or extreme limitations because they were inconsistent with the findings of treating psychiatrist Dr. Valenzuela, examining psychological consultant Dr. Rawlings and state agency consultant Dr. Ames-Dennard.   The ALJ noted Plaintiff visited more frequently with Dr. Valenzuela in 2011.   Tr. 21, 563-70.   The ALJ observed that despite Plaintiff's poor compliance with medication and treatment, she reported feeling better at her November 29, 2011 exam with Dr. Valenzuela.   Tr. 21-22, 563.   Dr. Valenzuela consistently reported Plaintiff was able to care for herself and that she felt good and denied difficulty with attention and concentration.   Tr. 22, 563-73.

The ALJ also compared Dr. Richichi's MRFC opinions to the findings of the consultative psychologist Dr. Rawlings, who examined Plaintiff in July 2010.   Tr. 18, 372-76.   Dr. Rawlings diagnosed Plaintiff with major depressive disorder, low sex drive (hypoactive sexual desire disorder), probable sleep disturbance and ruled out generalized anxiety disorder, with a GAF score of 52.   Tr. 18, 375-76.   The ALJ observed that the GAF score represented function only on the day of assessment and

---

[22] Medication compliance issues were also consistently noted by Dr. Valenzuela.

that it also incorporated environmental factors such as economic problems, occupational problems and problems related to interaction with the legal system. Tr. 18.   He concluded that Plaintiff's functioning would be much higher without her situational factors (*e.g.*, work-related legal issues).   Tr. 18.   Plaintiff scored 30/30 on a mental exam that Dr. Rawlings administered, indicating her mental functioning was intact.   Tr. 18, 375.   She was casually dressed, arrived on time, drove herself there and had no hygiene issues.   Tr. 18, 372-76.

Finally, the ALJ referred to the findings of state agency consultant Dr. Ames-Dennard.   Tr. 18.   Dr. Ames-Dennard opined that in light of Plaintiff's social skill deficits she would probably function best in a work setting requiring limited social engagement.   Tr. 437.   The ALJ accounted for these limitations in the RFC, limiting Plaintiff to interaction with others that is superficial in nature and incidental to the work performed.   Tr. 16.

As he did with Dr. Richichi, the ALJ properly assigned little weight to Dr. Schengber's December 2011 MRFC Questionnaire and his treatment notes by citing to specific evidence in the record demonstrating that his opinions were inconsistent with the record as a whole, including Plaintiff's statements on her function report. Tr. 19, 23, 147-54.   Despite Dr. Schengber's assessments of debilitating limitations, Plaintiff reported that she drives, shops for groceries, prepares meals for her family, cares for her pets, does laundry and cleans the house.   Tr. 23, 147-54.   She enjoys basket weaving, displaying her baskets at craft shows, watching television and spending time with family and friends.   Tr. 151.

The ALJ also outlined inconsistencies between Dr. Schengber's observations and those of Dr. Valenzuela on the same day, and accordingly assigned less weight to Dr. Schengber, as he is permitted to do.   *See* 20 C.F.R. § 404.1527(c)(4); Tr. 22-23 For example, on November 1, 2011, Plaintiff saw Dr. Schengber, who found she had difficulty with attention, concentration, multi-tasking, decision-making, problem solving and maintaining her train of thought.   Tr. 22, 687-88.   He reported she was severely depressed and appeared sullen, with psychomotor retardation.   Tr. 22, 687-88.   On the same day, however, Plaintiff told Dr. Valenzuela she had been crying all the time, but he assessed that her affect was appropriate. While her mood was sad and depressed, her eye contact was good, her appearance was appropriate and well-groomed, her psychomotor activity was normal, her thought process was goal directed and organized, her thought content was intact, her speech was soft but coherent, her abstraction and concentration were intact and her insight and judgment were good. Tr. 22, 564.

The ALJ also discussed inconsistencies between the findings of Dr. Schengber, Dr. Valenzuela and Dr. Rawlings at visits one day apart.   Tr. 22.   On May 11, 2011, Dr. Schengber found Plaintiff severely sad, tearful and anxious and restricted in range and intensity.   Tr. 22, 652.   He found she was severely depressed, sullen, had soft halting speech, decreased attention and concentration, loss of train of thought and slow mental processing speed.   Tr. 22, 652.   In contrast, on May 12, 2011, Dr. Valenzuela's opined her affect was appropriate, her mood was normal (euthymic), her eye contact was good, her appearance was appropriate and well-groomed, her

psychomotor activity was normal, her thought process was goal-directed and organized, her thought content was intact, her speech was soft but coherent and her abstraction and concentration were intact.   Tr. 22, 569.   Consequently, the ALJ properly followed the treating physician rule and had good cause to discount Dr. Richichi and Dr. Schengber's opinions and not give them controlling weight when he found that the doctor's opinions were not bolstered by the evidence, were conclusory or inconsistent with the medical records and made no reference to any clinical or laboratory diagnostic techniques to support the opinions.   *See Winschel*, 631 F.3d at 1179.

### VII.   Conclusion

Accordingly, for the reasons stated in this Report and Recommendation, it is hereby respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

**DONE** and **ENTERED** in Fort Myers, Florida on this 1st day of August, 2014.

CAROL MIRANDO
United States Magistrate Judge

Copies:

Honorable John E. Steele
Counsel of record